FILED
2007 May-22 AM 09:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| TUDOR INSURANCE COMPANY, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| vs. ] | CV-05-CO-02632-J |
| ] | |
| PROFESSIONAL CONSULTANTS, INC., ] | |
| *et al.*, ] | |
| ] | |
| Defendants. ] | |

MEMORANDUM OF OPINION

I.  Introduction.

The Court has for consideration plaintiff Tudor Insurance Company's (hereinafter referred to as "Tudor") Motion for Summary Judgment (Doc. 25), which was filed on February 15, 2007.  Tudor initiated this declaratory judgment action on December 29, 2005, seeking a declaration from this Court that it has no duty to defend and/or indemnify defendant Professional Consultants, Inc. (hereinafter referred to as "Professional Consultants") with respect to claims filed by Barbara Locke, Paul Cordell, Gary Tucker, Reveland Weir, and Clifton Johnson in the Circuit Court of Fayette County,

Alabama. (Doc. 1.) The issues raised in Tudor's motion have been briefed by the parties and are now ripe for decision. Upon full consideration of the legal arguments and evidence presented, the motion is due to be granted.

II.   Facts.[1]

In January of 1995, Jeffrey Grice, retail agent for Professional Consultants, requested that Alan Murray of Southern Cross Underwriters, Inc., a broker for Tudor, obtain a premium quote for errors and omissions coverage for Professional Consultants. Murray forwarded the request to Tudor Insurance Company and advised it that Professional Consultants currently held a general liability insurance policy and was seeking to move its errors and omissions coverage from Burns & Wilcox to Southern Cross Underwriters. On January 24, 1995, Murray received confirmation from Grice that Professional Consultants wanted both the general liability and errors and omissions policies of insurance to be provided through Southern

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, the facts submitted in the parties' Joint Status Report, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Cross.  After Grice requested that an errors and omissions policy be provided by Tudor, Tudor issued such a policy to Professional Consultants.

Professional Consultants' Errors and Omissions Liability Application for Renewal for Miscellaneous Business Classes, executed on November 10, 1995, evidences that it carried general liability insurance coverage. However, as of December 23, 1997, and January 31, 1998, Professional Consultants no longer carried general liability coverage.  According to Grice, Professional Consultants did not "see the need for general liability insurance" because Mr. Earnest, its president, operated alone.  Grice defines general liability insurance as providing coverage when Professional Consultants "damaged somebody's property or injured someone directly." Grice testified as follows:

> And I believe [Earnest's] comment to me was that he walks through his client's place of business with a pen and a clipboard, and he didn't see how he could injure somebody with that type of operation and we didn't see – neither he nor I saw a need for general liability coverage.

Following Professional Consultants' decision to discontinue its general liability insurance coverage, Tudor wrote Murray requesting information as to why Professional Consultants did not have general liability insurance

coverage in place.  On February 27, 2002, Grice responded on behalf of Professional Consultants as follows:

> Per your request for explanation of no general liability coverage, the insured operates out of his home and the operation consists primarily of fees for expert testimony in court proceedings and represent clients in OSHA hearings. Without the existence of a premise and due to the type of operation, there does not appear to be a meaningful general liability exposure. . . .

On December 2, 2004, Professional Consultants completed an application describing the nature of its professional or business activities for which errors and omissions liability coverage was desired as follows: "Provide safety & health audits to clients to assist them in compliance with OSHA standards, represent clients in informal conferences with OSHA, provide expert witness testimony."

At the time Professional Consultants submitted the December 2, 2004, application to Tudor, it was applying for errors and omissions coverage, which Professional Consultants' insurance agent, Grice, defined as "professional liability insurance, as opposed to general liability insurance or auto insurance." Tudor's Errors and Omissions Liability Policy of Insurance, Policy No. EOP 0026221, for a policy period of January 31, 2005, to January

31, 2006, was issued to Professional Consultants. The policy was mailed to Lacy Grice Insurance Agency and a copy was made by Grice and forwarded to Professional Consultants.

The declarations page of Tudor's policy provides that the profession of the insured is "solely in the performance of providing OSHA compliance consultant services for others for a fee." The bottom of the declarations page provides as follows: "The declarations page and endorsements and/or forms listed above and attached hereto together with the completed and signed application shall constitute the contract between the Insured and the Company. Furthermore, coverage provided hereunder is specifically limited to the Insured's profession, as shown in Item 3." The first page of the agreement provides: "THIS IS A CLAIMS MADE POLICY PLEASE READ CAREFULLY." The policy then provides:

> IN CONSIDERATION of the payment of the premium and deductible by the Insured and in reliance upon the statements in the Insured's application, attached hereto and made a part hereof, subject to the limits of liability set forth in the Declarations as well as all of the terms, conditions and exclusions of this policy, the Company agrees with the Insured as follows:

I.   **INSURING AGREEMENTS**

A.   **COVERAGE: CLAIMS MADE CLAUSE**
The Company will pay on behalf of the Insured all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages because of claims first made against the Insured and reported to the Company during the policy period.  This policy applies to actual or negligent acts, errors or omissions arising solely out of professional services rendered for others as designated in Item 3 of the Declarations.

For this coverage to apply, all of the following conditions must be satisfied:

1.   the negligent act, error or omission arising from professional services took place subsequent to the Retroactive Date stated in item 7. of the Declarations;

2.   the Insured had no knowledge prior to the effective date of this policy of such actual or alleged negligent act, error, omission or circumstance likely to give rise to a claim;

3.   claim is first made against the Insured and reported to the Company during the policy period.

> B. **DEFENSE, SETTLEMENT**
>
> With respect to the Insurance afforded by this policy, the Company shall defend any claim or suit against the Insured seeking compensatory money damages to which this insurance applies, even if any of the allegations of the suit are groundless, false or fraudulent. . . .

Under definitions, "claims expenses" is defined as:

> The term 'claims expenses' shall mean any and all costs, charges, fees and/or expenses incurred by the Company in investigating, defending, negotiating and/or otherwise attending to a claim or any litigation arising therefrom, provided however that 'claims expenses' does not include salary charges or expenses of regular employees or officials of the Company, or fees and expenses of independent adjusters.

"Loss" is defined as "damages, judgments, and claims expenses." The policy states that the coverage provided shall not apply to any loss in connection with or arising out of or in any way involving: "Bodily injury, sickness, disease, death or emotional distress of any person or for damages to or destruction of any tangible or intangible property including the loss of use thereof." The policy also provides that coverage shall not extend to any

loss in connection with or arising out of or in any way involving punitive or exemplary damages, fines, or penalties.

Tudor's coverage of Professional Consultants ended effective January 31, 2006. Following the expiration of Tudor's policy period, Murray assisted Professional Consultants, through Grice, with placing coverage with other insurers for the same coverage which had previously been provided by Tudor. A request was made of Chubb Insurance Company to provide a premium quote. Chubb responded to the request as follows: "Like Tudor, Chubb would also have an absolute [bodily injury] exclusion under our policy. Since the majority of their exposure indeed lies in the [bodily injury/property damage] area and not from a purely financial exposure, we would not be interested in quoting the account . . . ." As of today, Professional Consultants continues to carry only errors and omissions coverage, which is written by Philadelphia Insurance Company. The policy form provided by Philadelphia Insurance Company is almost identical to the one provided by Tudor.

On March 18, 2004, Barbara Locke, Paul Cordell, Reveland Weir, Gary Tucker, and Clifton Johnson filed suit against International Refining &

Manufacturing Company and others alleging that they, or their decedents, worked for Arvin Meritor in Fayette County, Alabama, through 2002, and that they were repeatedly exposed to chemicals and other toxins engineered, designed, developed, configured, manufactured, assembled, distributed, and/or sold by the defendants.  Professional Consultants was substituted for two fictitious parties and was added as a party defendant to the lawsuits.  As an example of the injuries alleged, plaintiff Locke alleges that as a proximate consequence of the negligence, wantonness, or other wrongful conduct of Professional Consultants, her husband developed cancer, incurred substantial medical expenses, suffered great physical pain and mental anguish, lost wages, and was caused to die.

Locke, Cordell, Weir, Tucker and Johnson allege Tudor's insured, Professional Consultants, was engaged in the business of suggesting, recommending, designing, developing, manufacturing, selling, distributing, installing, servicing, repairing, altering, modifying, testing, approving, and/or consulting regarding the design, engineering, manufacture, and distribution of warnings for chemicals and other toxins which allegedly caused injury or death to the underlying plaintiffs or their decedents.  They

contend that Professional Consultants negligently, wantonly, and/or wrongfully performed or failed to perform safety inspections with regard to the chemicals and other toxins used by the underlying plaintiffs or their decedents. They also claim that Professional Consultants negligently, wantonly, and/or wrongfully provided information or input for use in a safety consideration or recommendation regarding the chemicals and other toxins used in the manufacturing process by the plaintiffs', or their decedents', employer. The underlying plaintiffs seek compensatory and punitive damages for personal injuries allegedly incurred by them, or for the wrongful death of their decedents, against Tudor's insured. Specifically, they contend that they or their decedents were caused to develop cancer, incur substantial medical expenses, suffer physical pain and mental anguish, lose wages, or were caused to die.

  Following the filing of this Declaratory Judgment Complaint by Tudor, plaintiff Cordell filed a Fifth Amendment to Complaint with the Circuit Court of Fayette County, Alabama. The Amendment alleges that Professional Consultants negligently performed professional services during site visits at Arvin Meritor in Fayette County, Alabama. The Amendment contends that

Professional Consultants "proximately caused or contributed to caus[e]" Cordell to: develop skin cancer; incur substantial medical expenses; suffer great physical pain and mental anguish; lose past and future wages; lose earning capacity; and be prevented from going about his normal activities and his normal enjoyment of life.

Tudor set out its reasons for its coverage decision in a letter dated December 2, 2006, to Professional Consultants, and although Grice recognizes that there is an exclusion for "bodily injury" in errors and omissions policies, it is his opinion that such policies provide coverage for bodily injury. However, he understands the allegations in the underlying litigation are that Professional Consultants proximately caused or contributed to cause the underlying plaintiffs' injuries and damages, and Grice concedes that the damages are claims of bodily injury. Grice also admitted that he was not aware of any claims being asserted against Professional Consultants in the Fayette County litigation which did not constitute a claim for bodily injury. When asked what type of policy would provide coverage for Professional Consultants' activities which may result in someone being injured, Grice responded: "a general liability policy."

Grice testified that exclusions are in insurance policies for a purpose as the exclusions are picked up by other policies. Therefore, he acknowledges that because errors and omissions policies exclude claims for bodily injury, that coverage for bodily injury is offered by a general liability policy. Grice never requested that Tudor provide coverage to Professional Consultants for protection for claims of bodily injury.

III.   Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support

of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Discussion.

Tudor filed the instant action seeking a declaration from this Court that it has no duty to defend or indemnify Professional Consultants with respect to the lawsuits filed in the Circuit Court of Fayette County, Alabama.

Because jurisdiction in this case arises out of diversity of citizenship under 28 U.S.C. § 1332, the Court notes that Alabama law governs the interpretation of the insurance contract at issue. In Alabama, "[i]t is well settled that [an] insurer's duty to defend is more extensive than its duty to [indemnify]." *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058 (Ala. 2003) (quoting *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)). "An insurance company's duty to defend its insured is determined primarily by the allegations in the complaint giving rise to the action against the insured." *Western World Ins. Co. v. Resurrection Catholic Mission of the South*, 2006 WL 2079990 at *5 (M.D. Ala. 2006); *see also Ajdarodini v. State Auto Mutual Ins. Co.*, 628 So. 2d 312, 313 (Ala. 1993); *Sphere Drake Ins. PLC v. Shoney's,* 923 F. Supp. 1481 (M.D. Ala. 1996). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Chandler v. Alabama Mun. Ins. Co.,* 585 So. 2d 1365, 1367 (Ala. 1991) (citation omitted); *see also Blackburn v. Fidelity and Deposit Co. of Maryland,* 667 So. 2d 661, 668 (Ala. 1995) ("The insurer's duty to defend is

determined by the allegations of the complaint against the insured, whether true or groundless, and if there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured."). However, an insurer does not have a duty to defend or indemnify when the complaint shows either the non-existence of coverage or the applicability of a policy exclusion. *Western World Ins. Co.*, 2006 WL 2079990 at *5 (quoting *Alfa Specialty Ins. Co. v. Jennings,* 906 So. 2d 195 (Ala. Civ. App. 2005)). Where an insurer seeks to avoid coverage based upon an exclusion, the insurer bears the burden of establishing that the exclusion applies. *Id.* (quoting *Universal Underwriters Ins. Co. v. Stokes Chevrolet*, 990 F.2d. 598, 605 (11th Cir. 1993)). "Conversely, under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy." *Id.* (quoting *Colonial Life and Accident Ins. Co. v. Collins,* 194 So. 2d 532, 535 (Ala. 1967)).

"[I]t is imperative that courts enforce unambiguous policies as written." *Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*, 628

So. 2d 560, 562 (Ala. 1993); *see also Auto-Owners Ins. Co. v. Am. Cent. Ins. Co.*, 739 So. 2d 1078, 1081 (Ala. 1999). However, if an insurance policy is ambiguous in its terms, the policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide the maximum coverage to the insured. *Western World Ins. Co.*, 2006 WL 2079990 at *5 (quoting *Altiere v. Blue Cross and Blue Shield*, 551 So. 2d 290, 292 (Ala. 1989)).

Although the burden is on Professional Consultants to prove that the plaintiffs' claims fall within the coverage afforded by the policy, it is Tudor's burden to establish that the policy excludes coverage for any "loss," defined as "damages, judgment, and claims expenses," in connection with, arising out of, or in any way involving bodily injury, sickness, disease, death, or emotional distress. In this case, the policy provided to Professional Consultants by Tudor is unambiguous. It excludes coverage for any "loss" in connection with, arising out of, or in any way involving "bodily injury, sickness, disease, death or emotional distress of any person or for damages to or destruction of any tangible or intangible property including the loss of use thereof." (Doc. 27, Ex. 1, pp. 1-2.) The plaintiffs in the underlying

state causes of action contend that Professional Consultants' alleged negligence and wantonness was the proximate cause of their cancer. The plaintiffs allege that Professional Consultants negligently, and/or wantonly, performed or failed to perform safety inspections of the manufacturing process and associated equipment which caused or contributed to cause the plaintiffs' injuries and damages. The plaintiffs also allege that Professional Consultants undertook to provide information or input for use in a safety consideration or recommendation which caused or contributed to cause the plaintiffs' and their decedents to develop cancer, incur substantial medical expenses, suffer great physical pain and mental anguish, lose wages, and, in some cases, to die.

Professional Consultants would have this Court find that Tudor had a duty to inform it that without general liability insurance there is a hole in its coverage. On February 27, 2002, Grice responded to a request from Tudor questioning why Professional Consultants no longer carried general liability coverage. Grice stated that Earnest, president of Professional Consultants, "operates out of his home" and that the business consists primarily of fees for expert testimony in court proceedings and

representation of clients in O.S.H.A. hearings. (Doc. 27, Exhibit 14, Exhibit H.) "Without the existence of a premise and due to the type of operation, there does not appear to be a meaningful general liability exposure. Please advise if you require additional information." *Id*. Professional Consultants believes that this explanation satisfied Tudor due to the fact that more information was not requested.

Professional Consultants is of the opinion that "Tudor should have responded to Grice that without the general Liability Policy, Professional Consultants, Inc. would only have coverage that would be triggered by a 'financial downfall' to one of their clients." (Doc. 29, p. 5.) It also opines that "Tudor had a fiduciary duty to make the coverage issue clear at that time, when there were no claims to defend." *Id*. However, Professional Consultants cites no authority for the proposition that Tudor was under a duty to advise it of the type of insurance which may be necessary to completely protect it from claims of "bodily injury," such as those alleged by the plaintiffs in the Fayette County case. It is also worth noting that at one time Professional Consultants apparently realized the need for general liability coverage which protects the policy holder from third party claims

of "bodily injury" resulting from an "accident." In Alabama, a claim of negligence falls within the definition of an "accident" or "occurrence" as defined in a general liability insurance policy. *See United States Fidelity and Guaranty Company v. Armstrong*, 479 So. 2d 1164, 1167 (Ala. 1985). However, Professional Consultants voluntarily chose to terminate its general liability coverage.

Professional Consultants also cites the Court to provisions in the insurance policy which exclude claims for bodily injury relating to atomic energy and spores and fungus in support of its argument that the policy is ambiguous. Additional exclusions, or clarifications, which these statements appear to be, do not render the "bodily injury" exclusion ambiguous.

The "bodily injury" exclusion precludes coverage for all claims which arise out of, are in connection with, or in any way involve "bodily injury, sickness, disease, death or emotional distress of any person." It is the opinion of this Court that the claims alleged by the plaintiffs in the Fayette County litigation are clearly excluded by the policy.

V.   Conclusion.

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Doc. 25) is due to be GRANTED. Tudor Insurance Company has no duty to defend and/or indemnify Professional Consultants, Inc. with respect to the claims asserted by the plaintiffs in the Fayette County litigation as their claims are precluded by the "bodily injury" exclusion in the errors and omissions insurance policy. A separate order in conformity with this opinion will be entered contemporaneously herewith.

Done this <u>21st</u> day of <u>May 2007</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153